BAUGH v. McLAIN et al.    (No. 1384.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 2, 1915. On Rehearing, Feb. 25, 1915.)

1. PUBLIC LANDS ⬅176 — TEXAS — CERTIFICATE—RIGHTS OF ASSIGNEE.

Where a conditional land certificate issued in 1838 was in the same year sold and transferred, neither a subsequent purchaser of the land at administration sale of the original grantee's estate, nor his heirs, were in a position to question the issuance of the patent in virtue of the certificate.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. ⬅ 176.]

2. PUBLIC LANDS ⬅178 — TEXAS — CERTIFICATE—ASSIGNMENT.

Under the law of 1837, there was no prohibition or restraint upon the grantee's sale of a conditional certificate.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. ⬅ 178.]

3. PUBLIC LANDS ⬅178 — TEXAS — CERTIFICATE—VALIDITY OF ASSIGNMENT.

Where there was no proof that one who purchased a conditional certificate from the original grantee was then county surveyor, and it was found that he was not, the sale of the certificate to him was not void.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. ⬅ 178.]

4. PUBLIC LANDS ⬅175 — TEXAS — FORFEITURE—RELOCATION.

Where the purchaser of land at administration sale of the estate of the original holder of the conditional certificate, which had been assigned by him to another, received an unconditional certificate and relocated it upon the survey made for the conditional certificate, and filed his field notes in 1854, failing to comply with the law requiring field notes to be filed within one year from the date of relocation, the land commissioner was authorized to forfeit the relocation, the effect of which, under Acts 1852 (3 Gammel's Laws, p. 936), was to make the land subject to survey as vacant land by the holders of valid certificates.

[Ed. Note.—For other cases, see Public Lands. Cent. Dig. §§ 555–570; Dec. Dig. ⬅ 175.]

5. PUBLIC LANDS ⬅176 — CERTIFICATE — RIGHTS OF ASSIGNEE.

Where a patent and certificate for an unlocated balance issued in the name of the heirs of the deceased grantee, it inured to the benefit of the purchaser from the grantee's estate

in administration, who lost no rights by the issuance of the certificate to him as assignee, but retained such rights as he could legally establish.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. ☞ 176.]

6. PUBLIC LANDS ☞178 — TEXAS — CERTIFICATE — LOSS OF RIGHTS — ACQUIESCENCE WITH KNOWLEDGE.

Where the grantee of a conditional certificate transferred it, and it was filed March, 1854, it was notice of an adverse claim to the purchaser in administration of the grantee's estate, whose relocation filed in P. county October, 1854, was forfeited by the land commissioner; and where the conditional certificate was applied by a subsequent assignee to land in A. county, and patent issued thereon, the purchaser acquiescing therein precluded himself from asserting against the state or such assignee's successors any prior valid right to the land in P. county.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. ☞ 178.]

### On Rehearing.

7. PUBLIC LANDS ☞178 — TEXAS — CERTIFICATE—CONCLUSIVENESS OF RECITAL.

Under Act Sept. 5, 1850 (3 Gammel's Laws, p. 38), authorizing the county court, as a land board, to issue unconditional certificates "when the party applicant had previously obtained a conditional one," the recital, in an unconditional certificate, that one K. was the assignee of the deceased grantee of a conditional certificate was conclusive of K.'s ownership of the certificate, and as against the grantee's prior assignee, whose certificate had not been filed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. ☞ 178.]

Appeal from District Court, Panola County; W. C. Burford, Judge.

Trespass to try title by W. Pauline Baugh against Julia A. McLain and others. Judgment for defendants, and plaintiff appeals. Affirmed.

This is an action of trespass to try title, brought by appellant for the recovery of 1,280 acres of land in Panola county. The case was tried before the court without a jury, and judgment entered denying appellant a recovery of the land.

It is admitted that appellant is the sole heir of James T. Kelly, and her claim to ownership of the land in suit is in virtue of such heirship. And appellees have title through vendors under patents issued on surveys made since 1870, covering all the land in suit.

The material facts in the case are that on June 11, 1838, the board of land commissioners issued to Joseph Humphreys conditional land certificate No. 36, second class, for 1,280 acres of land. This certificate was located and survey made for Joseph Humphreys on August 20, 1838, by the deputy surveyor in then Shelby, but now Panola, county; and on January 30, 1839, the field notes were filed and approved by the county surveyor. The field notes of this survey were never returned to the general land office. But it appears as a fact that on August 5, 1838, Joseph Humphreys, by written conveyance, sold and transferred, for a valuable consideration, this conditional certificate to Richard Hooper. In 1842 Joseph Humphreys died, and the probate court of Harrison county appointed two joint administrators of the estate of Joseph Humphreys, and the survey of August 20, 1838, was inventoried as a part of the estate. On an order of sale of the probate court, the administrators, by deed of April 18, 1844, for a valuable consideration paid by Kelly, conveyed to James T. Kelly, by metes and bounds, 1,230 acres of the land out of the survey for the conditional certificate. And by deed of June 30, 1846, the administrators under orders of sale conveyed, for a valuable consideration, to James T. Kelly 50 acres of this same survey. It does not appear that Kelly had notice of the transfer of the certificate to Hooper at the time of his purchase from the administrators. On February 16, 1852, the county court, sitting as a land board, issued an unconditional certificate No. 41, second class, on the conditional certificate No. 36, reciting that James T. Kelly was entitled to it as assignee of Joseph Humphreys, deceased. The conditional certificate was filed in the land office on March 13, 1854, and the unconditional certificate was filed in the land office on October 24, 1854. On August 4, 1853, James T. Kelly as a fact relocated the unconditional certificate No. 41 on the same survey in Panola county made for the conditional certificate. The surveyor's records of Panola county show the following:

"James T. Kelly refiles the headright of Joseph Humphreys for 1,280 acres, and files same on the original survey of the same in survey No. 74, Dist. No. 5, on the west side of Sabine river at Pulaski. This August 4, 1853.

"[Signed] Jas. T. Kelly."

Kelly had the surveyor of Panola county make survey of the land on the ground July 28, 1854, and such certified field notes of the survey were filed in the general land office October 21, 1854. It reasonably appears that these field notes are corrected field notes of the surveyor made August 20, 1838. No other person had located upon or surveyed the land for appropriation. The land commissioner, acting on the return of the field notes, entered the following:

"Forfeited in consequence of nonreturn of field notes within the proper time, and the claim patented in Anderson county."

The date of the forfeiture, it is inferred, was at the time of or before the patent dated September 17, 1858. A survey was made, it appears, in Anderson county on March 10, 1853, by virtue of the conditional certificate No. 36 for John Smith as assignee, and filed and certified by the county surveyor.

---

The administrator of Richard Hooper, deceased, conveyed to John Smith the land in Anderson county and the unlocated balance of unconditional certificate No. 41. It appears as a fact that the issuance of the unconditional certificate No. 41 was by the commissioner of claims approved on July 27, 1858, but was ˙by him "registered and approved for the benefit of the heirs of Joseph Humphreys, the board not being authorized to issue to an assignee, and Humphreys seems to have been dead." The notation also appears on the record of the headrights registered by the court of claims in reference to the certificate No. 41, "alleged owner, John Smith." On September 17, 1858, a patent was issued to the heirs of Joseph Humphreys, by virtue of unconditional certificate No. 41, for 946 acres in Anderson county, Tex. On September 24, 1858, the commissioner of claims issued certificate to the heirs of Joseph Humphreys, deceased, for the unlocated balance of 334 acres of unconditional certificate No. 41, and a survey made therefor June 10, 1862, and field notes returned to the general land office for land in Shelby county February 23, 1863. The Humphreys certificate was not patented in Panola county. The several patents under which appellees hold title were on separate and distinct surveys made since 1871, and cover all the land in suit. It appears that Richard Hooper was county surveyor in 1838, but it does not appear that this Richard Hooper was the same Richard Hooper that purchased the conditional certificate. The court made the finding, which is supported by proof, that Richard Hooper was by purchase the owner of conditional certificate No. 36.

W. S. Anthony, of San Antonio, H. N. Nelson, of Carthage, and A. C. Bullitt, of San Antonio, for appellant. Brooke & Woolworth and R. W. Priest, all of Carthage, and Charlton & Charlton, of Dallas, for appellees.

LEVY, J. (after stating the facts as above). Appellant's right, as heir of James T. Kelly, is entirely dependent upon James T. Kelly's having title or claim as against the state for the land situated in Panola county prior to and at the time the state patented the land to the several vendors of appellees. And it is believed that the trial court properly entered judgment for the defendants, for the record shows that appellant failed to establish title or claim in James T. Kelly to the land in suit in Panola county on any ground upon which the court should have decreed title to her.

[1] Finding the fact to be, as the court did, that on August 5, 1838, Joseph Humphreys made conveyance of his conditional certificate No. 36 to Richard Hooper, and that Richard Hooper became the legal owner of the same, it would not appear that James T. Kelly was the legal assignee. And James T. Kelly not being the legal assignee of the original grantee, then neither Kelly nor his heir for him would be in a position to question the issuance of the patent in virtue of the certificate by the state.

[2] As the conditional certificate was issued under the law of 1837, there was no prohibition or restriction upon such sale by the grantee. Graham v. Henry, 17 Tex. 164; Merriweather v. Kennard, 41 Tex. 281.

[3] And as there is no proof in the record that the Richard Hooper who purchased the certificate was the same Richard Hooper who was county surveyor at the time, and as the court's judgment would comprehend the finding that he was not, the sale of the certificate to Richard Hooper was not void. The recital in the unconditional certificate that James T. Kelly was the assignee of Joseph Humphreys, deceased, was not conclusive of his ownership. The unconditional certificate was issued by the county court at the time the act of September 5, 1850, was in force. 3 Gammel's Laws, p. 38. That act only authorized the county court, as a land board to issue unconditional certificates "when the party applicant has previously obtained a conditional one." The "party applicant" clearly intends to refer to the original grantee. And the commissioner of claims, it appears, so construed the law at the time he registered and approved this unconditional certificate as a genuine certificate. He registered and approved the certificate only "for the benefit of the heirs of Joseph Humphreys" upon the ground that the county court, as a land board, was not authorized to issue an unconditional certificate to an assignee, and Joseph Humphreys was dead. The register also shows, it is observed, that, at the time of the approval by the court of claims, there was noted another claimant as assignee besides Kelly. It is thought that the trial court was authorized to hear proof of ownership and decide it, as the county court, sitting as a land board, had not power at that date to issue unconditional certificates to an assignee, and, as a consequence, the recital in the certificate that James T. Kelly was entitled to it as assignee of Joseph Humphreys, deceased, would not be conclusive of his right as assignee. The cases cited and relied on by appellant as seeming to hold that the act of a land board in issuing a certificate would be conclusive of the fact as to the assignee entitled to it are not at variance with this ruling, for those decisions were under different legislative acts than the act of 1850, and such other acts conferred different powers upon the board. The case of Pitts v. Booth, 15 Tex. 453, had under review the act of February 4, 1854, and the case of Merriweather v. Kennard, 41 Tex. 281, had under question the law of 1846 (Hart, Digest, 3097); and while the case of Capp v. Terry, 75 Tex. 396, 13 S. W. 53, was considering a certificate issued of date February 20,

1850, the land board was acting under the law in force prior to the passage of the act of September 5, 1850.

[4] But even assuming that it was established that James T. Kelly was the assignee of the unconditional certificate, it nevertheless must be held in this record, it is believed, that the application of the unconditional certificate to the Anderson county survey and issuance of patent and of certificate for unlocated balance to the heirs of Joseph Humphreys were not wholly unauthorized and void. It appears that, upon the issuance of the unconditional certificate, James T. Kelly undertook to make relocation of it, in accordance with sections 2 and 3 of the act of 1852 (3 Gammel's Laws, p. 936), upon the same survey in Panola county previously made for the conditional certificate No. 36. In clear point of fact, it appears in the record, James T. Kelly made relocation of the unconditional certificate on August 4, 1853. The field notes of the survey on which said relocation was made were returned and filed in the land office October 21, 1854. These field notes as made were merely corrected field notes, it must be presumed as a fact, for the relocation of the certificate was in point of fact made on the same survey, and intended so to be done, made for the conditional certificate. The land commissioner, in passing on the field notes filed in the land office by James T. Kelly on October 21, 1854, acted on same on or before September 17, 1858, as follows:

"Forfeited in consequence of nonreturn of field notes within the proper time, and the claim patented in Anderson county."

There was evident failure of compliance with the terms of the law requiring the return of field notes to the land office within a year from the date of relocation, and the land commissioner acted, in making actual forfeiture of the relocation, within his authority. The effect of the fact of forfeiture of the relocation for noncompliance with the terms of law in respect to the proper return of field notes and certificate of relocation was to make the land thereafter subject to survey as vacant land by persons holding valid certificates. Acts of 1852; House v. Talbot, 51 Tex. 462. And after such forfeiture in fact, and according to terms of law of the relocation of the unconditional certificate upon the Panola county survey, there was actual issuance of patent in virtue of the same unconditional certificate to land in Anderson county, and actual appropriation of land in Shelby county in virtue of certificate for the unlocated balance.

[5] Though the patent and certificate for unlocated balance issued in the name of the heirs of Joseph Humphreys, deceased, same inured to the benefit of James T. Kelly, if he was the legal assignee, and he lost no advantage given him by the issuance of the certificate to him as assignee, but still retained such rights as he could legally estab- lish. Merriweather v. Kennard, 41 Tex. 273; Hermann v. Reynolds, 52 Tex. 391; Lindsay v. Jaffray, 55 Tex. 626.

[6] At the time of the issuance of the patent and certificate, both the conditional and the unconditional certificates were on file in the land office. And the conditional certificate being on file since March, 1854, Kelly would have means of knowing that there were claimants of ownership thereof adverse to him. And knowing, as it must be presumed Kelly did, of the forfeiture of his relocation and of the application of the certificate to the survey in Anderson county made by John Smith, assignee of the conditional certificate, and patent issuing thereon, and taking no proceedings in respect thereto, but acquiescing, it is thought that Kelly would be precluded to assert against the state or the appellees any prior valid right to the land in Panola county. And in view of the facts it is not believed that the acts of 1871 could be held applicable and operative and could make void the issuance of the several patents to the land under which appellees hold title. 6 Gammel's Laws, p. 962; Id., vol. 7, p. 47; Adams v. Railway Co., 70 Tex. 252, 7 S. W. 729.

The judgment is affirmed.

### On Rehearing.

Appellant, in an ably prepared argument, insists that this court was in error in affirming the judgment upon the grounds that Richard Hooper, and not James T. Kelly, was by purchase the owner of conditional certificate No. 36, and that even if Richard Hooper was not the owner, but James T. Kelly was the legal assignee of unconditional certificate No. 41, nevertheless the heir of James T. Kelly could not recover in this suit because Kelly's right of location had been so forfeited in fact by the land commissioner for Kelly's failure to make return of field notes, as required by law, as to reannex the land to the rest of the public domain and make it subject to be located on and patented by appellees' vendors. These points rest on the facts.

[7] It is believed that appellant correctly states that we were in error in declaring that the recital in the unconditional certificate No. 41 that James T. Kelly was the assignee of Joseph Humphreys, deceased, was not to be regarded as conclusive of Kelly's ownership of the certificate, as against Richard Hooper. Upon a further consideration it is thought that there is not created by the act of 1850 a state of difference from the former laws, and that the cases cited would have application to the act of 1850 the same as in preceding acts. The fact, therefore, would appear that James T. Kelly was the assignee of unconditional certificate No. 41. But it is concluded, as before, that it has been proven that such right of Kelly to location on the particular land in suit had been so forfeited by the land commissioner, under terms of

law, as to reannex the land to the public domain and make it subject to be located on and patented to appellees' vendors. And this fact, in connection with Kelly's acquiescence, as before discussed, ultimates in the affirmance of the judgment.