**JANSEN v. KELLEY et al.**

No. 9672.

Court of Civil Appeals of Texas. Austin.

Nov. 12, 1947.

Rehearing Denied Dec. 1, 1947.

Park & Park and J. F. Park, all of Corpus Christi, for appellant.

Emory M. Spencer, of Rockport, for appellees.

HUGHES, Justice.

F. Jansen, appellant, sued, among others, the Right Reverend E. B. Ledvina, whom he alleged to be "Bishop and successor to the spiritual office heretofore held by the Reverend Peter Verdagner, who holds and claims title to the hereinafter described lands for the use and benefit of the Roman Catholic Church of the Diocese of Corpus Christi, Texas, * * *.

For cause of action appellant pleaded that on or about the 15th day of April, 1946, he "was lawfully seized and entitled to the possession of" Lots Four and Five, Fulton Subdivision of Fulton, Aransas County, Texas; ejection was alleged; also that he had acquired title under the 10-year statute of limitation. Prayer was for the recovery of title to and possession of the premises.

All defendants disclaimed except appellee, Reverend Ledvina, who answered by plea of not guilty, and specially alleged that he held title to the lands in trust for the Catholic Church. He also filed a cross action alleging that he was "lawfully seized and entitled to the possession of" the lands and premises and prayed for recovery of the title and possession. Appellant answered this pleading by general and special denials and by pleading the 10, 4 and 2-year statutes of limitation. Vernon's Ann.Civ. St. arts. 5510, 5526, 5527.

Trial was to the court without a jury and judgment was rendered that appellant take nothing by his suit and that appellee recover on his cross action the title to and possession of the lands in suit.

Appellee has filed no brief.

Appellant's first point is that the judgment of the trial court is fundamentally erroneous for the reason that the issues made by the pleadings will not support the judgment. We have set out the substance of the pleadings and in our opinion they contain all the requirements of a trespass to try title suit. The argument is made under this point that appellant was entitled to judgment against the disclaiming defendants, regardless of his right to judgment against appellee, citing Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288 (Err.Dis.), Williams v. Neill, Tex.Civ. App., 152 S.W. 693, and Woods v. Selby Oil & Gas Co., Tex.Civ.App., 2 S.W.2d 895, 898, affirmed Tex.Com.App., 12 S.W. 2d 994.

In Williams v. Neill it is said that where a party in an action of trespass to try title files a disclaimer, he is not to be considered as any longer a party to the suit, unless damages, in addition to the land, are sought.

In the Woods case, Fry, a defendant, was the common source of title. Fry had made two deeds, one to the plaintiffs and one to other defendants. The controversy was between the grantees in these deeds as to ownership of triangular tract of land owned by Fry when the deeds were executed. Fry disclaimed. The majority of the Court of Civil Appeals held that neither grantee had shown any title to the land but that Fry still owned it and his disclaimer inured to the benefit of plaintiff and supported the judgment in his behalf. Chief Justice McClendon concurred "upon the holding that if the deeds to Woods and appellees be construed not to convey the triangular tract in controversy, appellees are entitled to recover on the disclaimer of the Frys." He held, however, that Fry had conveyed the land, and the Supreme Court adopted his views.

The Taylor case was a boundary suit in which plaintiffs sued the Higgins Oil & Fuel Company and the Houston Production Company for recovery of a small tract of

land. Higgins filed a disclaimer as to the lands sued for by plaintiffs as well as to lands sued for by the Houston Production Company in its cross action. Judgment was for defendants. In discussing the effect.of the disclaimer of Higgins in favor of plaintiffs, the court said [2 S.W.2d 295]: "Appellants say the disclaimer filed by Higgins Oil & Fuel Company reinvested them with title sufficient to sustain this suit. This proposition is not sound. The disclaimer vested appellants with no title or interest not owned by them at the time they filed their suit. The legal effect of a disclaimer is merely that of an estoppel against the party filing it, and is not an affirmative grant of title to any one. The title under disclaimer only passes by virtue of the judgment. The Houston Production Company was a party defendant claiming this land by metes and bounds, and appellants could prevail as plaintiffs in trespass to try title only upon an affirmative showing of title."

Later in this opinion the court did say "there being a disclaimer in favor of the plaintiffs, it was fundamental error for the court to refuse the plaintiffs judgment on that disclaimer." Notwithstanding this language, the court, upon determination of boundary issues for defendant, held that an instructed verdict against plaintiffs was correct and affirmed the judgment for defendants as to recovery of the land.

■ The result reached in the Taylor case parallels the conclusion of the trial court in the present case. In neither case was plaintiff awarded judgment as against disclaiming defendants, it appearing in that case and in this case (below) that plaintiff did not prove title against non-disclaiming defendants.

■ We believe our first quotation from the Taylor case to be a correct statement of the law as applied to the facts of this case. If it had been shown here that the disclaiming defendants had any title to the lands sued for, then their disclaimer in favor of appellant would have inured to his benefit and against appellee. No such showing is made. A disclaimer by one having no title should certainly not operate to the prejudice of one who has

or is claiming title. The situation is entirely different where all defendants disclaim. In such cases judgment must be rendered upon the disclaimer and this without proof of title on the part of plaintiff.

Appellant's second, third and fourth points relate to the trial court's finding and conclusion that appellant had as a matter of law or by the overwhelming weight of the testimony shown title under the 10-year statute of limitations.

Appellant owned a trailer house and had lived in a free tourist camp in Rockport from 1932 to 1934, when he moved to Fulton and located on the lots in suit in the spring of 1935 with his trailer house, from which he removed the wheels and installed blocks. He and his wife have occupied the property ever since. He has kept chickens and an old car on the premises and cultivated a small garden. A fence partly enclosing the property was built about 2 years ago. In 1946 appellant attempted to render and pay taxes on the property, but this was refused. He testified that he had been claiming the property as his own since the spring of 1935, when he moved on it.

It is not shown that anyone else has ever occupied these lots. Appellant's physical possession of the property since 1935 was substantiated by other witnesses.

Appellant's suit was filed April 19, 1946, and appellee was made a party August 2, 1946.

Father Kelley, pastor of the local Catholic Church since March 1936, a witness for appellee, testified that quite some time after March 7, 1936, he was approached by Judge Fox (Aransas County Judge), who requested permission for a Mr. Jansen to place his trailer on the church lots. Father Kelley submitted this request to the Bishop, who granted it with the proviso that Jansen would not make any claim to the property, and Father Kelley so told Judge Fox.

Judge Fox testified that C. L. Harris, owner of Fulton Cottages, now deceased, asked him if he would see Father Kelley about getting permission for Mr. Jansen to move onto the church property. He did see Father Kelley, who told him the consent of the Bishop in Corpus Christi was

necessary. A few days later Judge Fox was informed by Father Kelley that permission had been received and that he could tell Mr. Harris.

Mrs. Harris, widow of C. L. Harris, testified that her husband died May 26, 1942; that she had been running Fulton Cottages for about 13 years; that appellant and his wife lived right behind her and had so resided for about 11½ years. Continuing, she testified as follows:

"Q. Do you remember the occasion of their moving there? A. Yes, I do.

"Q. Relate to the Court what that occasion was.

"Mr. Park: We would like for counsel to ask her questions rather than have her tell a story here of what her husband told her, and all that kind of stuff. (To witness): All you know is what your husband told you?

"Witness: I certainly do.

"Mr. Park: We are going to object to any testimony as to what her husband told her as being hearsay.

"Witness: Well, I know all about it, too, —I was there.

"The Court: In other words, you are about to testify to facts peculiarly within your knowledge?

"Witness: Yes, sir.

"The Court: Well, the Court will overrule the objection, if that's the case.

"Mr. Park: Note our exception.

"Q. Now, what was the occasion or the events leading up to their moving onto these lots? A. Well, Mr. Jansen was to run the boat for Mr. Harris and we were living in No. 2 cottage then and didn't have any place for Mr. Jansen to stay; and he asked us if he and his wife couldn't camp on a lot that Arthur Davis had, and Mr. Harris told him that he didn't have anything to say about it, that he could camp there as far as he was concerned, and they camped there for awhile and then Mr. Jansen said that it was awful hot back there and moved his trailer onto these lots where they are now that belong to the Catholic Church, and we and Judge Fox and Father Kelley were good friends and Mr.

Harris told Mr. Jansen that he would make arrangements with them for him to live there on those lots, and he came down and talked to Judge Fox about it and came back and told Mr. Jansen that it was all right for them to stay there, that it was agreeable to Judge Fox and Father Kelley."

Cross-Examination By Mr. Park:

"Q. That is, your husband came back and told him that? A. Yes, sir."

Appellant admitted that he had talked with Mr. Harris about getting permission to camp on a lot other than those in suit. He also admitted that he, a short time before this suit was filed, promised Father Kelley to draw up a lease on the lots involved.

■ This latter admission was an acknowledgment of appellee's title. Houston Oil Co. of Texas v. Pullen, Tex.Com.App., 272 S.W. 439. Even though this admission may have been made after the time when limitation title was claimed perfected, it was admissible as evidence tending to show that the possession during the limitation period was not adverse, and was sufficient to raise the issue. Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81.

■ The evidence is otherwise sufficient to raise the issue that appellant's occupancy of the land was with the permission or assent of the owner since, at least, the latter part of 1936. Such occupancy is not adverse. 2 Tex.Jur. p. 133. It is not claimed that limitation title was perfected prior to 1945.

■ The testimony of Mrs. Harris shows that appellant was looking for a place to camp. He moved on the church property. Mr. Harris, with appellant's knowledge, undertook to obtain permission for him to continue living there and was later advised that it was agreeable with Judge Fox and Father Kelley. Accepting this version of the testimony, as the trial court did, appellant is estopped to deny that Mr. Harris and Judge Fox were acting in his behalf. This being true, all statements made by or to either of these gentlemen were not subject to the objection that they were hearsay.

860

The finding of the trial court that appellant's possession was not adverse is amply supported by the evidence.

Appellant's last point is that since appellee failed to prove his title and appellant was shown to have had prior possession of the land he should have been awarded judgment.

We need not discuss the numerous instruments offered in evidence by appellee to establish his title, for the reason that appellant alleged in the pleading upon which he went to trial that appellee "holds and claims title" to the lands sued for.

This was a judicial admission by and conclusive upon appellant and dispensed with the necessity of appellee proving his title. 17 Tex.Jur., p. 576.

The judgment of the trial court is affirmed.

Affirmed.